# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS BURLESON,<br><br>    Plaintiff,<br><br>  v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA; NATIONS DIRECT MORTGAGE, LLC LONG TERM DISABILITY PLAN; and DOES 1-10,<br><br>    Defendants. | Case No. 8:23-cv-01036-JWH-DFM<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE** |

# I. INTRODUCTION

This case concerns an ERISA claim that Plaintiff Douglas Burleson asserts against Defendant The Guardian Life Insurance Company of America, through which Burleson seeks an award of long-term disability benefits. The parties tried this matter before the Court in June 2024. For the reasons set forth below, the Court concludes that Burleson is not entitled to long term disability benefits.

# II. FINDINGS OF FACT[1]

## A. Plan Provisions

1. Guardian issued Group Policy No. G-00488247-GC to policyholder Trustees of the Finance, Insurance and Real Estate Industry Insurance Trust Fund, on behalf of participating employer and Plan Sponsor Nations Direct Mortgage, LLC.[2]

2. That insurance policy funds certain benefits available to eligible individuals under the Nations Direct Plan (the "Plan"), including long term disability ("LTD") benefits.[3]

3. Under the Plan, "Total Disability or Totally Disabled" is defined as follows:

> [A]s a result of *sickness* or *injury*, during the *elimination period* and the *own occupation* period, you are not able to perform with reasonable continuity the substantial and material acts necessary to pursue your usual occupation and you are not working in your usual occupation[.][4]

4. Under the Plan, "substantial and material acts" are defined as follows:

---

[1] To the extent that any of the Findings of Fact herein are considered Conclusions of Law, they are adopted as such. Likewise, to the extent that any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

[2] Administrative Record ("AR") [ECF Nos. 27-35] 1-5.

[3] *Id.* at 5, 356, & 756.

[4] *Id.* at 373 (emphasis in original).

> [T]he important tasks, functions and operations generally required by employers from those engaged in your usual occupation that cannot be reasonably omitted or modified.[5]

5. The Plan's "Own Occupation Period" is defined as the first 24 months of benefit payments from the Plan.[6]

6. The Plan pays benefits "once each month at the end of the period for which they are payable."[7]

7. Benefit payments end on the date that the claimant is no longer disabled or fails to reasonably provide proof of loss as required by the Plan.[8]

8. The Plan's "Ongoing Proof of Loss" provision states as follows:

> To continue to receive payments from this plan, you must give us current proof of loss as often as we may reasonably require. Ongoing proof of loss must be provided to us within 90 days of the date we request it. Failure to furnish such proof within the time period required shall not invalidate or reduce any claim provided such items are sent as soon as reasonably possible.[9]

9. The Plan does not cover disabilities "caused or substantially contributed to by a pre-existing condition or medical or surgical treatment of a pre-existing condition."[10] Under the Plan, a pre-existing condition is defined as follows:

> (a) You received medical treatment, care or services for a diagnosed condition or took prescribed medication for a diagnosed condition in the six months immediately prior to the effective date of your insurance under this *plan*; or
>
> You suffered from a physical, or mental condition, whether diagnosed or undiagnosed, which was misrepresented or not disclosed in your Application (i) for which you received a *doctor's* advice or treatment within six months

---

[5]     *Id.*
[6]     *Id.* at 356.
[7]     *Id.* at 372.
[8]     *Id.* at 358.
[9]     *Id.* at 372.
[10]    *Id.* at 366.

before the effective date of your insurance under this plan, or (ii) which caused symptoms within six months before the effective date of your insurance under this *plan* for which a prudent person would usually seek medical advice or treatment; and

(b) The *disability* caused or substantially contributed to by the condition begins in the first 24 months after the effective date of your insurance under this *plan*.[11]

### B. Burleson's Employment

10. Burleson was a Loan Officer/Portfolio Retention Relationship Manager for Nations Direct.[12] That position required Burleson to provide customer service; interview applicants; and examine, evaluate, authorize, and recommend approval of customer applications for lines or extension of credit. That job required Burleson to stand up to 2.5 hours per day and to lift up to 10 pounds.[13]

11. Burleson worked for Nations Direct from April 19, 2021, to July 26, 2021.[14]

12. On March 10, 2022, Burleson's employment was terminated as a result of company layoffs.[15]

### C. Burleson's Medical History Prior to his Disability Claim

13. Burleson has a history of rheumatoid arthritis.[16] He has been taking medication for that condition since 2001.[17] In November 2020, he began seeing rheumatologist, Catherine Driver, M.D. for that condition.[18]

---

[11] *Id.* (emphasis in original).
[12] *Id.* at 2660-2666.
[13] *Id.*
[14] *Id.* at 785, 925, & 3202.
[15] *Id.* at 814.
[16] *Id.* at 839, 2021, & 2254.
[17] *Id.* at 1412 & 2254.
[18] *Id.* at 2220-2254.

14. In September 2020, Burleson began to see a marriage and family therapist, Kerreen Chau, LMFT, for treatment of general anxiety disorder, post-traumatic stress disorder, and major depression disorder.[19]

**D.  Burleson's Hospitalization, and Subsequent Medical Care**

15. On July 27, 2021, Burleson went to Providence Mission Hospital, complaining of back pain and respiratory distress, including shortness of breath and coughing.[20]

16. Burleson was diagnosed with pneumonia, septic shock, empyema, and acute hypoxic respiratory failure, and he was admitted to the hospital.[21]

17. Burleson was intubated, and he was maintained on a ventilator for approximately three weeks.[22]

18. Burleson was discharged from Providence Mission Hospital on August 24, 2021, and he was transferred to another hospital for long-term acute care, where he remained until September 17, 2021.[23]

19. On September 21, 2021, Burleson was evaluated by the rheumatology department of Providence, and he reported moderate to severe joint pain and swelling.[24]

20. In October 2021, Burleson complained of "foggy brain." His family medical doctor, James Johnson, M.D., described that condition as a "minimal cognitive impairment" that was slowly improving.[25]

21. On October 26, 2021, Dr. Driver evaluated Burleson, and she confirmed his diagnoses of rheumatoid arthritis and osteoporosis. Dr. Driver also diagnosed Burleson with right-handed hand deformity.[26]

---

| | |
|---|---|
| 19 | *Id.* at 846 & 2141. |
| 20 | *Id.* at 2020-2030. |
| 21 | *Id.* |
| 22 | *Id.* |
| 23 | *Id.* at 2020, 2021, & 2226. |
| 24 | *Id.* at 2244-2249. |
| 25 | *Id.* at 1213 & 1215. |
| 26 | *Id.* at 2237-2243. |

22. On December 2, 2021, Burleson expressed concerns to Dr. Johnson about his mental acuity, and Burleson reported that he had "cut way back on alcohol." Burleson reported that he was forgetful; he had trouble focusing; and he had episodes during which he has spaced out for several minutes. Dr. Johnson diagnosed Burleson with depressive disorder; exposure to SARS-CoV-2; alcohol abuse; minimal cognitive impairment; and pulmonary histoplasmosis.[27]

### E. Guardian's Evaluation of Burleson's Claim and Burleson's Subsequent Medical Care

23. While Burleson was hospitalized, his then-wife called Guardian to file a claim for short term disability ("STD") benefits on Burleson's behalf.[28]

24. In support of Burleson's application for STD benefits, Dr. Johnson completed Guardian's STD Attending Physician Statement ("APS") form in November 2021, reporting that Burleson should "stay off work" through at least December 6, 2021, due to fatigue, trouble sleeping, and elevated blood pressure.[29]

25. On December 13, 2021, Dr. Johnson completed another APS form, noting that Burleson continued to experience chest pains; elevated blood pressure; depression and anxiety; sleep and energy issues; and difficulties with focus and concentration. Dr. Johnson noted that Burleson should stay off work until February 1, 2022.[30]

26. On January 4, 2022, Dr. Johnson completed another APS form, noting that Burleson should stay off work until April 1, 2022. Dr. Johnson reported that Burleson suffered from mild cognitive impairment, paired with "struggles with energy, motivation, ability to concentrate, [and] sleeping issues."[31]

27. On February 22, 2022, Dr. Johnson completed another APS form, noting that Burleson must avoid "mental, emotional [and] physical stress" as well as "significant mental and physical activity" due to a variety of conditions and symptoms including "poor focus" and "lethargy[.]" Dr. Johnson again noted that Burleson should stay off work until April 1, 2022.[32]

---

[27]   *Id.* at 1206.

[28]   *Id.* at 1021-1025.

[29]   *Id.* at 1193.

[30]   *Id.* at 1203.

[31]   *Id.* at 1284-1288.

[32]   *Id.* at 1299-1301.

28. On March 1, 2022, Therapist Chau completed an APS form, noting that Burleson felt sad, nervous, hopeless, and fearful. Burleson struggled with concentration and focus. Therapist Chau noted that Burleson should stay off work for six months, after which he should be reevaluated.[33]

29. On March 11, 2022, infectious disease physician Dr. Edgar Wayne completed an APS form, confirming that Burleson experienced easy fatiguability, joint pain, and brain fog. Dr. Wayne noted that Burleson should stay off work until April 25, 2022.[34]

30. As of March 17, 2022, Guardian had approved and paid Burleson's claim for STD benefits through the maximum STD benefit end date of January 31, 2022, and Guardian transitioned Burleson's claim to an LTD claim.[35]

31. Guardian's STD claim notes stated that Burleson should stay off work due to "minimal cognitive impairment," but there was no mention of a mental status exam or of any deficits or inability to perform activities of daily living or to manage finances. Additionally, there was no medical information from neurology to review, and no functional limitations were noted.[36]

32. Guardian also reviewed the STD claim from a behavioral health perspective. The reviewing Behavioral Health Case Manager ("BHCM") noted that Burleson had a depressed and anxious mood; difficulty concentrating; and panic attacks. However, those conditions were being addressed by psychotherapy treatment and medications.[37]

33. Because Burleson's LTD coverage became effective June 1, 2021, the relevant six-month "lookback" time frame for the pre-existing conditions review was December 1, 2020, through May 31, 2021.[38]

34. In a letter dated March 29, 2022, Guardian informed Burleson that it received his LTD claim and that, in order to be eligible for benefits, Burleson had to satisfy the Plan's pre-existing conditions clause.[39] Guardian informed Burleson that

---

[33]   *Id.* at 2196-2197.

[34]   *Id.* at 1384.

[35]   *Id.* at 783 & 794.

[36]   *Id.* at 788-789.

[37]   *Id.* at 792-793 & 824.

[38]   *Id.* at 768-769 & 841.

[39]   *Id.* at 1468-1470.

"[a]lthough we have requested this information on your behalf, it remains your responsibility to follow-up with your provider(s) and ensure that Guardian receives the outstanding documentation[.]"[40]

35. As part of its claim review and pre-existing conditions investigation, Guardian interviewed Burleson on March 31, 2022. Burleson identified Dr. Johnson as his sole treating physician. Burleson described his only symptom as a "lung infection," and he did not mention any claimed cognitive impairment.[41]

36. In a functionality questionnaire dated April 25, 2022, Dr. Johnson noted that Burleson was disabled based upon "[m]ajor depression with anxiety, sadness, poor focus, low energy, chronic lung condition with fatigue and dyspnea," and Dr. Johnson noted that Burleson should stay off work until July 1, 2022.[42]

37. During a phone call on April 29, 2022, Burleson informed Guardian that he was not claiming disability based upon rheumatoid arthritis.[43]

38. As part of its LTD claim investigation, Guardian requested and received medical records from Burleson's physicians: Dr. Johnson, Dr. Wayne, Dr. Patel, and Dr. Driver.[44]

39. Burleson saw neurologist Dr. Patel only once, on April 12, 2022.[45] At that time, Burleson noted some gradual improvement of his cognitive complaints.[46] Burleson was alert and oriented during the examination.[47] Dr. Patel completed a brief cognitive screening, which reported a score of 26/30 (the "MMSE score").[48] No validity measures were provided.[49] Dr. Patel ordered an MRI, and Burleson expected to report back to Dr. Patel with the results in June 2022. However, there is no indication that

---

[40]   *Id.* at 1470.

[41]   *Id.* at 813.

[42]   *Id.* at 2034.

[43]   *Id.* at 839.

[44]   *Id.* at 1953, 2212, 2557, 2874, & 2943.

[45]   *Id.* at 839 & 2558.

[46]   *Id.* at 2558.

[47]   *Id.* at 2560.

[48]   *Id.* at 2561.

[49]   *Id.*

Burleson ever returned to Dr. Patel or obtained an MRI. The AR does not reflect that Burleson received any further treatment with a neurologist or neuropsychologist.

40. On April 19, 2022, Dr. Wayne evaluated Burleson. Burleson reported ongoing deficits in his short-term memory, concentration, and focus. Burleson reported that he continued to be easily overwhelmed in stressful situations.[50]

41. On April 29, 2022, Therapist Chau provided a letter summarizing Burleson's diagnosis and treatment. Therapist Chau noted that Burleson experienced "difficulty coping with the [] loss[] of his cognitive functioning."[51] She explained that it is not advisable that Burleson seek work until his physical ailments improve and his mental state is stronger.

42. On May 3, 2022, Dr. Driver noted that Burleson should stay off work until May 5, 2023, and that Burleson was "completely unable to work" for reasons including "neurologic symptoms."[52]

43. As part of Guardian's LTD claim review, a Nurse Case Manager ("NCM") completed a medical assessment on May 27, 2022. The NCM concluded that it was reasonable for Burleson to stay off work until July 30, 2022, based upon his hospitalization for lung conditions and ongoing complaints related to those lung conditions.[53]

44. The NCM determined that Burleson's diagnoses of COVID-19 and rheumatoid arthritis were pre-existing conditions that would not support Burleson's claim for LTD benefits.[54]

45. The BHCM determined that Burleson's diagnoses of depression, anxiety, and post-traumatic stress disorder ("PTSD") were pre-existing conditions that were not covered under the terms of the Plan.[55]

46. On June 3, 2022, Guardian approved LTD benefits as of Burleson's LTD benefit effective date of January 23, 2022, based upon his symptoms associated with his

---

[50] *Id.* at 1958-1977.
[51] *Id.* at 2141.
[52] *Id.* at 2214.
[53] *Id.* at 872.
[54] *Id.* at 839, 857, 1412, & 2254.
[55] *Id.* at 883-884.

hospitalization and his prolonged need for a ventilator/intubation due to his lung infection.[56]

47. On June 6, 2022, Guardian informed Burleson of its decision to approve LTD benefits, but that no benefits were payable for Burleson's pre-existing conditions of depression, anxiety, PTSD, COVID-19, or rheumatoid arthritis.[57]

48. On June 30, 2022, Dr. Johnson noted that Burleson continued to struggle with mental confusion and forgetfulness. Burleson reported that he had a hard time managing daily tasks. Dr. Johnson noted that Burleson should stay off work until September 1, 2022.[58]

49. On July 27, 2022, Dr. Johnson completed an APS form, noting that Burleson's primary diagnosis was major depression and that Dr. Johnson anticipated that Burleson would be capable of returning to work as of October 1, 2022.[59]

50. On August 11, 2022, Dr. Driver completed an APS form. In answering the question of "when do you expect the claimant will return to their previous functional levels?" Dr. Driver answered: "In terms of memory and loss of executive function, anticipate will be long term."[60]

51. On August 22, 2022, Dr. Johnson recommended that Burleson stay off work until November 1, 2022. Dr. Johnson noted that Burleson continued to struggle with cognitive issues; that Burleson had trouble with focus and staying on task; and that he was very forgetful.[61]

52. As part of its ongoing claim review, Guardian interviewed Burleson on September 1, 2022. Burleson instructed Guardian to look in Dr. Johnson's records to learn more about Burleson's symptoms that prevent him from working. Burleson stated that he wanted Guardian to obtain records from only Dr. Johnson, and no other providers. Burleson requested a notation in his file that Guardian was not authorized to request records from Dr. Driver, or Burleson's other doctors, and Burleson reiterated that there

---

[56] *Id.* at 882-884 & 2716-2719.

[57] *Id.* at 884-889.

[58] *Id.* at 2741 & 3050.

[59] *Id.* at 2935-2940.

[60] *Id.* at 2946-2950.

[61] *Id.* at 3044.

were no other medical records for Guardian to obtain, as Burleson's disabling symptoms were noted in his office visits with Dr. Johnson.[62]

53. On September 13, 2022, the NCM reviewed the updated medical information and noted there was no evidence of ongoing pulmonary histoplasmosis.[63] According to Burleson's examination records, Burleson's lungs were stable with the occasional shortness of breath upon exertion as well as some lethargy, weakness, and joint pain.[64] The NCM found that Dr. Johnson did not provide objective evidence of cognitive impairment.[65] The Case Manager noted and discussed with the NCM that there were no neurology records to obtain, as Burleson informed Guardian he was treating with only Dr. Johnson and not Dr. Patel.[66]

54. Burleson followed up with Dr. Johnson on October 14, 2022. During that visit, Dr. Johnson recorded Burleson's continuing complaints of fatigue, ongoing cognitive issues shortness of breath when walking, joint pain, weaknesses and dizziness, depression, and sleep disturbance and anxiety, and Dr. Johnson reaffirmed his prior diagnoses, including cognitive disorder.[67]

55. Guardian determined that the available medical and vocational information did not support continued disability under the terms of the Plan.[68]

56. On October 18, 2022, Guardian denied Burleson's claim, stating that he was not entitled to benefits beyond October 22, 2022.[69] The letter from Guardian states that the records that Dr. Johnson provided did not support an inability to return to work, as there were no objective findings evidencing cognitive impairment, nor any physical examination findings evidencing impairment from pulmonary histoplasmosis. The letter informed Burleson of his appeal rights under the Plan, explaining that, if Burleson desired an appeal review, then he would need to submit the reasons for appeal in writing and provide Guardian with medical evidence supporting continued disability.

---

[62]   *Id.* at 907-908.

[63]   *Id.* at 914-916.

[64]   *Id.* at 915.

[65]   *Id.* at 916.

[66]   *Id.* at 916-918 & 920-921.

[67]   *Id.* at 3180-3183.

[68]   *Id.* at 919-921.

[69]   *Id.* at 964-968.

### F. Burleson's Appeal

57. Burleson timely appealed the denial decision.[70]

58. Burleson provided Dr. Johnson's updated medical records dated August 22 and October 14, 2022, and an APS form from late 2022.[71] Burleson did not provide any neurology records or testing.

59. Dr. Johnson's APS form listed Burleson's symptoms as "depression, anxiety, poor focus and concentration, memory impairment, fatigue, and breathing difficulty."[72] Dr. Johnson also noted "residual symptoms involving cognition, mood, breathing, energy, joint pain, general health."[73] When asked to "detail" the restrictions provided, Dr. Johnson stated only that Burleson "cannot work now," and he crossed out the "Patient Abilities" section of the form, noting "N/A. Completely disabled."[74] Dr. Johnson stated that Burleson was temporarily disabled until January 2, 2023, due to "complex medical conditions and severe underlying psychological stress," but Dr. Johnson did not specify any restrictions or limitations. Dr. Johnson's treatment plan included a recommendation to "follow through w/ brain MRI and neurology work-up."[75]

60. On October 27, 2022, Burleson's Appeals Case Manager ("ACM") interviewed Burleson.[76] Burleson asserted that he could not work due to cognitive issues, lung issues, and fatigue. The ACM asked Burleson to confirm the name and contact information for all treating providers for his disabling condition, and Burleson confirmed that his only treating provider was Dr. Johnson. Burleson stated that he intended to undergo a CT scan of the brain and that Dr. Johnson was keeping Burleson out of work pending Dr. Johnson's receipt of the CT results, but that the scan had not been scheduled and Burleson had not yet been referred to a neurologist. Burleson also reported his daily activities included paying bills and completing typical household chores, and he stated that he had not applied for social security disability insurance.

61. Guardian obtained a medical assessment of all of the medical information that it received during the claim and appeal, which was completed on December 1,

---

| 70 | *Id.* at 3200-3206 & 3190-3191. |
|---|---|
| 71 | *Id.* at 3177-3188. |
| 72 | *Id.* at 3223. |
| 73 | *Id.* at 3226. |
| 74 | *Id.* at 3223-3226. |
| 75 | *Id.* at 3222-3223. |
| 76 | *Id.* at 3200-3206. |

2022.[77] The NCM noted that Burleson experienced symptoms from multiple pre-existing conditions that were excluded from coverage; however, the extent of Burleson's claimed cognitive issues and impairment remained unclear, and there was a lack of objective findings or other evidence to support specific restrictions and limitations beyond October 22, 2022.[78]

62. Guardian determined that an independent medical examination ("<u>IME</u>") by a board-certified neuropsychologist was appropriate to clarify Burleson's cognitive capabilities and limitations and to evaluate Burleson's ability to perform the duties of his own occupation.[79]

63. Guardian arranged for an IME with Mark W. Bondi, PhD., ABPP-CN, who is board certified in Clinical Neuropsychology.[80]

64. Dr. Bondi completed the IME on February 7, 2023.[81] Burleson completed neuropsychological testing, but the test results did not reveal valid and reliable evidence of cognitive impairment, as Burleson performed below expectation on all stand-alone and most embedded measures of performance validity and effort. Burleson's performances on tests of verbal comprehension, objective naming, single-work reading, basic auditory attention, and visual abstract reasoning were within or above normative expectations, and, thus, they reflected Burleson's intact functioning in those areas. However, the IME included several well validated stand-alone tests and embedded measures of performance validity, which indicated that Burleson did not expend a full and consistent effort during the IME. As a result, any scores that fell below normative reference levels could not be interpreted as accurate representations of Burleson's cognitive ability. Burleson's poor performance on neuropsychological testing sharply contrasted with his demonstrated cognitive abilities during the interview portion of the IME.

65. Dr. Bondi certified that he "carried out [his] professional responsibilities in an independent, unbiased, impartial and thorough manner" and that he had no conflict of interest with that review.[82]

---

[77]   *Id.* at 930-939.

[78]   *Id.* at 3495.

[79]   *Id.* at 3229 & 3282.

[80]   *Id.* at 3241.

[81]   *Id.* at 3335-3348.

[82]   *Id.* at 989.

66. Guardian provided Burleson with a copy of Dr. Bondi's IME report, and it invited him to respond, pursuant to ERISA's appeal procedures.[83]

67. Burleson's written response asserts, "in my opinion the test as a whole is contractive and should be voided and administered by a non-biased tester."[84]

68. In a letter dated March 15, 2023, Dr. Johnson informed Guardian that he disagreed with Dr. Bondi's conclusions, explaining that the "clinical record presents a compelling case in support of a disability claim, clearly describing the triggering events and outlining the ongoing symptoms."[85] Dr. Johnson asserted that Dr. Bondi's report is "useless" and that it should have no bearing on the case because "Dr. Bondi himself states that his testing was not valid."[86] Dr. Johnson further contended that Burleson remained disabled due to a combination of multiple conditions, including issues with breathing and physical endurance, as well as rheumatoid arthritis, PTSD, depression, and anxiety that "all coalesced" to render him disabled.[87] Dr. Johnson also noted that Burleson's job required sustained focus and concentration, multitasking, and quick-decision making.

69. Guardian provided the new information to Dr. Bondi, who reviewed it and completed an addendum report on March 30, 2023.[88] Dr. Bondi refuted Dr. Johnson's alleged mischaracterization of his report, explaining that he never stated that the "testing was not valid."[89] Dr. Bondi explained that the tests selected for the assessment of Burleson's functioning were well validated and reliable measures. Instead, Burleson's "noncredible scores on formal performance validity tests . . . called into question any of the scores that fell below normal limits[.]"[90]

70. On three of four validity tests, Burleson scored at or below the clinical 15% cutoff relative to the sample of patients.[91] In contrast, of the clinical samples of patients with verified diagnoses, "none (0%) of [the] variety of clinical samples had 3 of those scores at or below the 15% cutoff, including those with traumatic brain injury (TBI),

---

[83] *Id.* at 3333-3334.

[84] *Id.* at 3368.

[85] *Id.* at 3408-3409.

[86] *Id.*

[87] *Id.*

[88] *Id.* at 3498-3501.

[89] *Id.* at 3498.

[90] *Id.*

[91] *Id.*

temporal lobectomy, anxiety or major depressive disorders, ADHD, or those with the claimant's demographic characteristics[.]"[92]

71. Burleson's "Test of Memory Malingering" performance was approximately 1.5 standard deviations worse than a group of patients with moderate-to-severe mixed dementia, and it was more than 5.5 standard deviations worse than a group of patients with mild cognitive impairment; it "reflected chance-level responding" of 25/50 correct.[93]

72. Burleson's performance speed on non-memory executive function tests was 3.7 standard deviations worse than patients with TBI, as well as 2.4 standard deviations worse than a "performance-*invalid* TBI group," demonstrating that Burleson "performed even below individuals with noncredible memory complaints."[94]

73. Burleson's timed executive function test scores were 2.0 standard deviations worse than patients with Parkinson's disease, "who by definition are slowed in their movements and typically perform more poorly on timed tests," and his scores were 1.5 standard deviations worse than patients who had both Parkinson's disease and dementia.[95]

74. Dr. Bondi explained that Burleson's performances contained internal inconsistencies. For example, his abnormal performance validity/effort scores "sharply contrasted with his good everyday memory abilities" as demonstrated when Burleson "described his autobiographical and medical history in good detail."[96] Dr. Bondi explained that "[s]uch accuracy in everyday memory abilities would be highly unlikely to occur" in an individual with such low performance validity scores. The only clinical groups who approach obtaining such low scores are patients with moderate-to-severe dementia who have "demonstrably poor everyday memory abilities."[97]

75. In addition, Burleson had an elevated score on the Response Bias Scale, which concerned Dr. Bondi because empirical research has demonstrated that a score at

---

[92] *Id.* at 3498-3499.

[93] *Id.* at 3499-3500.

[94] *Id.* at 3500 (emphasis in original).

[95] *Id.*

[96] *Id.*

[97] *Id.*

that level "is particularly sensitive to the overreporting of memory problems and is associated with noncredible memory complaints."[98]

76.   Dr. Bondi's addendum concluded that "[g]iven that there were external motivators to perform poorly on the neuropsychological IME and, given the vast majority of [Psychomotor Vigilance Test] performance levels observed in this examination, one must consider whether the claimant consciously put forth poor effort or reported noncredible cognitive complaints."[99]

77.   Dr. Bondi's addendum report further states that he had "no conflict of interest."[100]

78.   Upon its receipt of Dr. Bondi's addendum report, Guardian obtained an updated Medical Assessment.[101] The NCM reviewed and summarized the medical information and determined that it did not support restrictions or limitations related to Burleson's cognitive and mental health, based upon his performance during the IME.

79.   On April 28, 2023, Guardian informed Burleson of the appeal determination.[102] The letter from Guardian summarizes the medical records and explains that Guardian's review included "all medical information on file and on appeal," which was insufficient to overturn the decision.[103] The letter includes the Plan terms regarding pre-existing conditions, and it reiterates that Burleson was not eligible for benefits based upon his pre-existing conditions of COVID-19 symptoms, pain related to orthopedic issues, depression, anxiety, PTSD, or rheumatoid arthritis. The letter further explains that Burleson's pulmonary symptoms from histoplasmosis were documented through October 22, 2022, but that "there was no supported medical evidence for any restrictions or limitations precluding [Burleson] from performing [his] usual/own occupation on full-time basis beyond October 22, 2022 as defined by the Plan."[104] Moreover, Dr. Bondi was unable to obtain valid and reliable evidence of a cognitive impairment. Thus, the medical evidence did not support any restrictions or limitations precluding Burleson from

---

[98]   *Id.*

[99]   *Id.* at 3443.

[100]  *Id.* at 994.

[101]  *Id.* at 951-953.

[102]  *Id.* at 3490-3497.

[103]  *Id.* at 3492-3495.

[104]  *Id.* at 3496.

performing his own occupation beyond October 22, 2022, based upon his claimed lung disorder or cognitive impairment.

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

In an ERISA case, the district court's inquiry concerns whether the plaintiff "is disabled within the terms of the policy." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). The district court "will have to make findings of fact under Federal Rule of Civil Procedure 52(a)." *Id.* "Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997). The district court "interpret[s] terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (internal quotation marks and citation omitted).

Under a *de novo* review standard,[105] the district court "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits[.]" *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). The district court "can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney*, 175 F.3d at 1095. The district court may conduct an "independent evaluation of the evidence in the administrative record[.]" *Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1109 n.8 (9th Cir. 2003). The plaintiff bears the burden to prove that he is disabled, and he is entitled to benefits by a preponderance of the evidence. *See Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010); *Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1123 (C.D. Cal. 2015).

#### B. Burleson is Not Entitled to LTD Benefits

The Court concludes that Burleson has failed to show that he is entitled to continuing LTD benefits under the Plan.

As an initial matter, the Court concludes that Guardian correctly determined that Burleson's diagnoses of rheumatoid arthritis, depression, anxiety, and PTSD were pre-existing conditions and, therefore, that those conditions were not covered under the Plan. The Court further concludes that Burleson is not entitled to coverage based upon his

---

[105] Order [ECF No. 23].

pulmonary symptoms, because there is no medical evidence to support any restrictions or limitations beyond October 22, 2022.

Burleson has not shown that he is entitled to LTD benefits based upon a cognitive impairment. Although Burleson has received a medical diagnosis for a "minimal cognitive impairment,"[106] a "medical diagnosis does not by itself establish disability." *Popovich v. Metro. Life Ins. Co.*, 281 F. Supp. 3d 993, 1003 (C.D. Cal. 2017) (citation omitted). Rather, a plaintiff "must prove that his impairment is disabling, using objective and subjective medical evidence in the record." *Id.* Burleson has failed to make the requisite showing.

There is virtually no objective medical evidence in the record to indicate that Burleson has a cognitive impairment. The record reflects that Burleson saw a neurologist once in April 2022.[107] Although Dr. Patel obtained an MMSE score, Dr. Patel did not interpret that score.[108] Burleson never obtained a brain MRI or followed up with a neurologist.

Burleson contends that his subjective account of his pain can support a disability finding. However, a plaintiff's "subjective reports of cognitive impairment do not establish disability under an ERISA plan." *W. v. Unum Life Ins. Co. of Am.*, 2018 WL 6071090, at *12 (C.D. Cal. July 3, 2018*), aff'd*, 798 F. App'x 154 (9th Cir. 2020).

The bulk of the medical evidence regarding Burleson's alleged cognitive impairment stems from the opinions of Dr. Johnson. Although Dr. Johnson is Burleson's treating physician, a district court need not "accord special weight to the opinions of a [plaintiff's] physician." *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Shaw*, 144 F. Supp. 3d at 1128–29 (citing *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004)) ("Most of the time, physicians accept at face value what patients tell them about their symptoms; but insurers [] must consider the possibility that applicants are exaggerating in an effort to win benefits[,] or are sincere hypochondriacs not at serious medical risk.").

To assess Dr. Johnson's opinion, the Court must consider (1) the extent of Burleson's treatment history; (2) Dr. Johnson's specialization or lack thereof; and (3) how much detail Dr. Johnson provided supporting his conclusions. *Shaw*, 144 F. Supp. 3d at 1129. Regarding the first factor, Dr. Johnson began treating Burleson shortly before July 2021, and Dr. Johnson continues to treat Burleson. With respect to

---

[106]  *See, e.g.*, AR 1215.

[107]  *Id.* at 2558.

[108]  *Id.* at 2561.

the second factor, Dr. Johnson is not a neurologist, psychiatrist, psychologist, or other mental health specialist. Instead, Dr. Johnson is a family medicine doctor.

Regarding the third factor, it appears that Dr. Johnson's diagnosis was based exclusively upon Burleson's own self-reported limitations. Moreover, Dr. Johnson's APS forms and additional reports do not contain many details. For example, when asked to "detail" the restrictions provided, Dr. Johnson stated only that Burleson "cannot work now," and he crossed out the "Patient Abilities" section of the form, noting "N/A. Completely disabled."[109] After considering each of those factors, the Court concludes that it should afford little weight to Dr. Johnson's opinions.

Dr. Driver, Dr. Wayne, and Therapist Chau provided some statements in support of Burleson's alleged cognitive impairment. But those relatively few statements, which appear to be based entirely upon Burleson's subjective complaints, cannot, on their own, support Burleson's request for LTD benefits.

The Court concludes that Dr. Bondi's objective testing outweighs Burleson's unsupported subjective complaints. *See Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F. Supp. 3d 1237, 1254 (N.D. Cal. 2014) (citation omitted) ("[S]ubjective evidence of a disabling condition is inherently less reliable than objective evidence."). Dr. Bondi is board certified in Clinical Neuropsychology. Dr. Bondi's objective testing did not reveal valid and reliable evidence that Burleson had a cognitive impairment. Instead, Dr. Bondi's testing indicated that Burleson did not expend a full and consistent effort, which raised concerns that Burleson was malingering. The Court concludes that Dr. Bondi performed unbiased testing, and the Court gives credence to the results of Dr. Bondi's testing. Additionally, the Court concludes that Dr. Bondi's report was based upon a complete record, because Burleson indicated that he wanted Guardian to review only Dr. Johnson's records. Therefore, the Court determines that Guardian appropriately credited the objective evidence obtained from Dr. Bondi. Burleson's claimed cognitive impairments are susceptible to verification by objective testing, and they were contradicted by the objective medical evidence.

Accordingly, Burleson has failed to show by a preponderance of the evidence that he is unable to perform the duties of his own occupation. The Court concludes that Burleson is not entitled to continuing LTD benefits under the Plan.

---

[109]    *Id.* at 3223-3226.

## IV. DISPOSITION

For the foregoing reasons, the Court will enter Judgment in favor of Guardian and against Burleson.

**IT IS SO ORDERED.**

Dated: September 3, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE